UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMILY VELAZQUEZ,<br><br>    *Plaintiff*,<br><br>    v.<br><br>L.I. AUTOWORLD, INC. d/b/a<br>GENERATION KIA;<br>GENERATION KIA and<br>FLAGSHIP CREDIT ACCEPTANCE LLC,<br><br>    *Defendants*. | Civil Action No.: 20-cv-01055(GRB)(AKT)<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Emily Velazquez, Plaintiff herein, by her attorneys, alleges and complains of Defendant as follows:

**PRELIMINARY STATEMENT**

1. Emily Velazquez ("Plaintiff" or "Ms. Velazquez") is a victim of fraud and unfair and deceptive practices related to her purchase and financing of a vehicle at a dealership that identifies itself as "Generation Kia."

2. Plaintiff executed Retail Installment Contract with Generation Kia for the purchase of a 2014 Kia Sportage. When the purported assignee of the agreement, Defendant Flagship Credit Acceptance LLC, would not agree to accept the assignment of the contract, Generation Kia cancelled the contract without contractual or legal authority. Generation Kia then unlawfully repossessed the vehicle, leaving Plaintiff without the financing agreement to which the parties had agreed, and with no vehicle.

1

3. Ms. Velazquez brings claims against Defendants for violations of the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.* ("TILA"), Federal Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.* ("ECOA"), New York Motor Vehicle Retail Installment Sales Act ("MVRISA"), New York Uniform Commercial Code ("UCC"), New York General Business Law § 349 ("NYGBL § 349"), conversion, fraud, breach of contract, and breach of the duty of good faith and fair dealing.

## JURISDICTION AND VENUE

4. The Court has jurisdiction pursuant to 15 U.S.C. § 1640(e) (TILA) and § 1691e (ECOA) as well as 28 U.S.C. § 1331.  Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

5. Jurisdiction over Plaintiff's claims for declaratory relief is conferred by 28 U.S.C. § 2201.

6. Venue is proper in this District under 28 U.S.C. § 1391 because Plaintiff resides in this District, a substantial part of the events and occurrences underlying this litigation occurred within this District, and Defendants regularly conduct business here.

## PARTIES

7. Plaintiff Emily Velazquez is a natural person and citizen of New York residing in Farmingdale, NY.

8. Ms. Velazquez is a "consumer," as described in 15 U.S.C. § 1602(i).

9. Upon information and belief, L.I. Autoworld, Inc. does business under the trade name Generation Kia, is the entity referred to as Generation Kia in the agreement at issue in the instant complaint, and is the auto dealership located in Bohemia, New York (Suffolk County) that sold vehicles to Plaintiff.

10. Defendant Generation Kia is the entity listed as the seller of the vehicles at issue in the instant complaint, is listed on the agreement referenced in the instant complaint, and is the auto dealership located in Bohemia, New York (Suffolk County) that sold vehicles to Plaintiff.

11. Defendant L.I. Autoworld, Inc. and Defendant Generation Kia are referred to collectively as "Generation Kia."

12. Generation Kia was at all times relevant to this Complaint a "creditor" as defined by 15 U.S.C. § 1602(g) and 15 U.S.C. § 1691a(c).

13. Defendant Flagship Credit Acceptance LLC ("Flagship") is a Delaware limited liability company with principal place of business in Chadds Ford, Pennsylvania (Delaware County).

14. Defendant Flagship was at all times relevant to this Complaint a "creditor" as defined by 15 U.S.C. § 1602(g) and 15 U.S.C. § 1691a(c).

## FACTS

### Purchase of the Kia Soul

15. On July 30, 2018, Plaintiff purchased a used 2012 Kia Soul, VIN #KNDJT2A60C7364005 ("Soul") from Generation Kia.

16. As part of the purchase of the Soul, Plaintiff paid $2,000 as a down payment.

17. The Soul was also financed through Credit Acceptance Corporation, an auto finance company.

18. The Soul was a vehicle riddled with reliability and performance defects.

19. Plaintiff complained numerous times between July 2018 and March 2019 of strange noises emanating from the Soul and its constant need for oil replacement.

**Kia Sportage – Retail Installment Contract**

20. On or around March 1, 2019, Plaintiff brought the Soul to Generation Kia for service. Rather than address the defects with the Soul, Generation Kia arranged for Plaintiff to trade in her Soul for a used 2014 Kia Sportage ("Sportage") (VIN # KNDPCCA68E7659548).

21. On March 1, 2019, Plaintiff executed a Retail Installment Contract ("RIC") and purchased the Sportage from Generation Kia.

22. However, Plaintiff was not provided with a fully signed copy of the RIC, either in person or at any point thereafter by mail or other means.

23. The copy of the RIC that Generation Kia provided to Plaintiff contains only the signature of the "FIMANAGER" at "Generation Kia[.]"

24. The RIC identified "Generation Kia" as the "Seller-Creditor" in the Sportage sale transaction.

25. The RIC provides that "You, the Buyer . . . may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller – Creditor . . . the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures are part of this contract."

26. The RIC listed Federal Truth-In-Lending Disclosures, including an "ANNUAL PERCENTAGE . . . 24.99%[,]" "FINANCE CHARGE . . . $18912.55[,]" AMOUNT FINANCED . . . $20140.97[,]" TOTAL OF PAYMENTS . . . $39053.62[,]" "down payment of $2500.00[,]" and "TOTAL SALE PRICE . . . $41553.52[.]"

27. The RIC stated that "72" payments are due "[m]onthly beginning 03/31/2019" in the amount of "[$]542.41[.]"

28. Under the "ITEMIZATION OF AMOUNT FINANCED[,]" the RIC contains a "Cash Price (including $1294.56 sales tax)" of "$1843.56[,]" "Total Downpayment = . . . $2500.00[,]" "Total Other Charges and Amounts Paid to Others" of "$3697.41" and "Amount Financed . . . $20140.97[.]"

29. Under the "ITEMIZATION OF AMOUNT FINANCED[,]" the RIC indicates that "the Total Downpayment" includes a "Gross Trade-In Allowance" of "$6100.00" for the Soul "Less Prior Credit  . . . Balance" of "$6100.00[.]"

30. Thus, as part of the Sportage purchase, Plaintiff agreed to trade in the Soul to Generation Kia and Generation Kia agreed to pay off the remaining balance owed.

31. Additionally, as reflected in the RIC, Plaintiff paid "$2500" to Generation Kia as a down payment for the Sportage.

32. As applicable, the RIC provides that there is "NO COOLING OFF PERIOD" and "[a]fter you sign this contract, you may only cancel it if the seller agrees or for legal cause."

33. The RIC contains a full merger clause, stating that "[t]his contract contains the entire agreement between you and us relating to this contract.  Any change to this contract must be in writing and we must sign it."

34. The RIC also provides that "ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF."

35. At the time of the 2014 Sportage transaction, Generation Kia indicated to Plaintiff that it intended to assign the Sportage through Flagship Credit Acceptance LLC.

36. The RIC indicates that "Seller [Generation Kia] assigns its interest in this contract to FLAGSHIP CREDIT ACCEPTANCE (Assignee) under the terms of Seller's agreement(s) with Assignee" and is "[a]ssigned without recourse[.]"

37. Upon information and belief, Generation Kia has one or more agreements with Flagship and Flagship has authorized Generation Kia to act as an agent on its behalf, including executing the assignment of retail installment contracts used to finance the sale of the Sportage.

**Cancellation of the RIC**

38. On March 1, 2019, after signing the RIC, Plaintiff took possession of the Sportage.

39. Knowing that her first payment on the Sportage was coming due on March 30, 2019, Plaintiff repeatedly contacted Generation Kia to ascertain the address where she should send her first monthly payment.

40. One or more representatives from Generation Kia assured Plaintiff that she should not worry and that she would receive a bill in the mail.

41. Plaintiff also received no information from Flagship regarding where she should send her first monthly payment.

42. However, in the weeks following the execution of the RIC, Plaintiff received correspondence from Flagship dated March 22, 2019 stating that it was in receipt of Plaintiff's "recent application for credit to purchase a vehicle as submitted . . . by . . . Generation Kia (Dealer). Unfortunately, after careful consideration, we were unable to offer you credit on the terms that you requested."

43. On March 29, 2019, New York State issued a Certificate of Title to Plaintiff indicating she was the titleholder of the Sportage, and that Flagship was the sole "lienholder" on the Sportage.

44. Concerned about the correspondence she had received, on April 23, 2019, Plaintiff contacted another representative of Generation Kia who assured her that "everything is fine," "the car is yours," and "don't worry, you'll get the bill end of this month."

45. On May 17, 2019, the Sportage overheated while Plaintiff was driving on the Long Island Expressway and became inoperable. Plaintiff arranged for the Sportage to be towed to Generation Kia, where representatives told her they would assess the condition of the vehicle and update her regarding its condition the following day.

46. Additionally, while the Sportage was receiving service, Generation Kia told Plaintiff that it could not get approval from Flagship to finance the Sportage.

47. On or about May 18, 2019, Generation Kia told Plaintiff that the RIC for the Sportage was "void" because Flagship did not approve her for financing.

48. Thereafter, Generation Kia kept and retained the Sportage and refused to return the Sportage to Plaintiff's custody and control.

49. Upon information and belief, without authority or consent of Plaintiff, Generation Kia and/or Flagship, or their agents, contacted New York State, falsely represented that Flagship's lien had been satisfied, and fraudulently transferred title of the Sportage back to Generation Kia and/or a third-party.

50. Plaintiff has been without a vehicle since Generation Kia, on behalf of itself and/or on behalf of Flagship, took control of the Sportage on May 18, 2019 and refused to return it to the Plaintiff, the titleholder.

**Failure to Timely Pay Issue**

51.     On or about May 19, 2019, Plaintiff received a telephone call from Credit Acceptance Corporation indicating that she was two months past due on the Soul.

52.     Thus, Plaintiff was alerted that Generation Kia and/or Flagship had failed to pay off the residual amount owed on her trade as indicated in the RIC.

53.     Plaintiff subsequently discovered that her credit score with Trans Union had decreased by approximately 80 points, in whole or in part, because of the late payments.

54.     Following Plaintiff's complaints to Generation Kia regarding its failure to pay off the balance of the Soul, Generation Kia paid the residual balance owed on the Soul to Credit Acceptance Corporation on May 24, 2019.

## COUNT I
### Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.* ("TILA")

55.     Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

56.     Plaintiff's transaction as described herein was a consumer credit transaction within the meaning of the TILA, 15 U.S.C. §1601, et seq. ("TILA"), and Regulation Z, 12 C.F.R. part 226.

57.     Defendants are creditors within the meaning of TILA and Regulation Z.

58.     The TILA disclosures in the RIC are illusory as the Defendants have failed to disclose one or more terms which purportedly grant to them the right to cancel the agreement at their whim.

59.     Thus, *inter alia*, the disclosures identifying the costs of the Sportage, APR, finance charge, amount financed, total sale price, number of payments, monthly payment amount, due date, etc. are meaningless and subject to cancellation at Defendants' whim.

60. As a result of Defendants' failure to properly include these terms modifying the costs and/or other fees and charges, the sale price, finance charge, amount financed, and APR disclosed in the RIC are all materially misstated in violation of TILA and Regulation Z. *See, e.g.,* 15 U.S.C. § 1638(a)(2) through (5) and § 226.18(b), (d), (e), and (h).

61. Defendants failed to provide Plaintiff with clear and conspicuous disclosures of the terms of the loan as required under TILA and Regulation Z. *See, e.g.,* 15 U.S.C. § 1632(a), § 1638(a), and Regulation Z, *e.g.* 12 C.F.R. § 226.17(a)(1).

62. As a result of Defendants' incomplete, inaccurate, and materially misstated disclosures, Plaintiff has suffered actual damages, including the loss of her primary means of transportation and her reliance on pay-for-service transportation.

63. Had Defendants provided complete and accurate disclosure of all terms, costs, finance charges and interest rates, Plaintiff would not have agreed to purchase the Sportage on the terms and conditions imposed on her by the Defendants or agreed to trade in the Soul, and instead would have sought to purchase a vehicle with defined, obligatory payment terms.

64. For all these reasons, Defendants are liable under TILA and Regulation Z (*see, e.g.,* 15 U.S.C. §§ 1640 and 1641) for statutory damages, actual damages, attorney's fees, litigation expenses and costs, for a declaratory judgment that they have violated TILA and Regulation Z, and for such other or further relief as the Court deems appropriate.

65. Upon information and belief, Flagship is an assignee of the contract entered into between the Generation and Plaintiff. The TILA violations set forth herein are clear upon the face of the documents assigned, including *inter alia* by consultation of the RIC provision which states as follows: "State law does not provide for a 'cooling off' or cancellation period for this sale."

## COUNT II
### Federal Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.* ("ECOA"),

66. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

67. As set forth above, after Flagship refused to accept assignment of the RIC, Generation Kia informed Plaintiff that it would not abide by the RIC because it believed her credit was insufficient to purchase the Vehicle.

68. This action constituted a denial of credit.

69. However, Generation Kia failed to provide to Plaintiff any written statement of reasons for the denial of credit and to provide the disclosures mandated by 15 U.S.C. § 1691(d)(2)(B), thereby violating the ECOA.

70. As a result of the above alleged ECOA violation, Plaintiff has suffered substantial actual damages, including the loss of the Sportage, lack of ability to increased costs to obtain alternative vehicle through purchase and financing, the loss of her rights to determine the basis for her credit denial, loss of the credit itself, frustration, anger, and embarrassment.

71. As a result of the above ECOA violations, Generation Kia is liable to Plaintiff for statutory damages, actual damages, punitive damages of $10,000.00 pursuant to 15 U.S.C. § 1691e(b) and for attorney's fees and costs pursuant to 15 U.S.C. § 1691e(d).

## COUNT III
### New York Motor Vehicle Retail Installment Sales Act
### New York Personal Property Law § 301, *et seq.* ("MVRISA")

72. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

73. The RIC violates New York Personal Property Law § 302[1] because it does not contain all the agreements of the parties to the transaction.

74. The RIC violates New York Personal Property Law § 302[5](1) because it does not contain all items required to be disclosed by TILA and its implementing regulations.

75. Defendants also violated New York Personal Property Law § 316 they repossessed or accepted a voluntary surrender of the Sportage pursuant to the provisions of article nine of the uniform commercial code, but failed to within seventy-two hours of such repossession or surrender, personally deliver or mail to the Plaintiff at her last known address a written notice setting forth the right of Plaintiff to redeem the Sportage, the dollar amount necessary to redeem, and the name, address and telephone number of the holder from which information may be obtained regarding such redemption.

76. As a result of the above MVRISA violations, Plaintiff is entitled to declaratory judgment against Defendants that they have violated MVRISA, actual damages, a civil penalty, attorney's fees and costs.

## COUNT IV
## New York Uniform Commercial Code ("UCC")

77. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

78. The subject transaction, including Defendants' repossession and sale of the Vehicle are subject to Article 9 of the New York's Uniform Commercial Code.

79. Defendants violated Article 9 by failing to provide any of the required notices in connection with their repossession of the Sportage, either before or after the repossession. To wit, and without limitation, Defendants have provided none of the notifications required pursuant to NYUCC §§ 9-611 through 9-614 and § 9-616;

80. Because the required notices were not provided at all, they were also not provided timely. To wit, their provision was neither within the statutorily required times (*see, e.g.,* NYUCC § 9-611; New York General Obligations Law § 7-401).

81. To the extent they were entitled to the collateral at all -- which they were not, upon information and belief, Defendants failed to dispose of the collateral within the time limitations set forth in NYUCC § 9-620(f)

82. Plaintiff is therefore entitled to, *inter alia*, pursuant to NYUCC § 9-625, actual damages, statutory damages, costs, release of the collateral, and attorney's fees.

## COUNT V
## New York General Business Law § 349 ("NYGBL § 349")

83. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

84. Each of the deceptive acts and practices set forth above constitute violations of NYGBL § 349 independent of whether these acts and practices constitute violations of any other law.

85. The sale of the Sportage detailed herein, in which Plaintiff executed the RIC, but Generation Kia and/or Flagship asserted that they could cancel the RIC and repossess the vehicle without any contractual or other legal basis constitutes a deceptive business practice.

86. Further, Generation Kia and/or Flagship's cancellation of the RIC without contractual or other legal basis constitutes a deceptive act and practice and was committed in conduct of business, trade, commerce or the furnishing of a service in this state.

87. Each of these actions was consumer-oriented and involves misleading conduct that is recurring and has a broad impact upon the public, or, in the alternative, such misleading

practices are the types that could easily recur, could potentially impact similarly situated consumers, and are therefore consumer-oriented and harmful to the public at large.

88. As a result of these violations of NYGBL § 349, Plaintiff suffered and continue to suffer pecuniary and non-pecuniary harm.

89. Defendants' violations were willful and knowing and committed in bad faith.

90. For these reasons, Plaintiff is entitled to actual damages, three times actual damages up to $1000, punitive damages, costs and reasonable attorney's fees pursuant to NYGBL § 349(h), and declaratory judgment that Defendants' practices are deceptive as defined under § 349.

## COUNT V
### Conversion

91. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

92. Since May 19, 2019, Defendants have intentionally and without authority or good faith claim to right, have exercised control over Plaintiff's personal property by keeping the Sportage and preventing Plaintiff from the possession, use and enjoyment of her vehicle.

93. Defendants' actions were taken with the malicious intent to deprive Plaintiff of the possession, use and enjoyment of her property.

94. The malicious and intentional taking of the Sportage resulted from Defendants' refusal to honor their agreement with Plaintiff.

95. Plaintiff had an absolute possessory right to the Sportage.

96. Defendants had a duty to Plaintiff not to interfere with her right to possession of the Sportage.

13

97. Defendants control over Plaintiff's Sportage and their interference with it are in derogation or exclusion of Plaintiff's rights.

98. As a direct and proximate result of Defendants' malicious and intentional taking of the Sportage and their refusal to return it, Plaintiff has suffered actual damages including but not limited to the loss of the Sportage and the other actual damages.

99. Upon information and belief, Defendants' actions to repossess vehicles without a present right of possession and its wrongful refusal to release vehicles is part of a larger policy and practice.

100. Accordingly, Defendants are liable to Plaintiff for their conversion of the Sportage for actual damages, punitive damages – in an amount sufficient to punish Defendants for their intentional and malicious repossession and to prevent Defendants from perpetrating the harm on other consumers, attorneys' fees, costs, and expenses.

## COUNT VI
### Fraud

101. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

102. Defendants fraudulently induced Plaintiff to enter into a RIC for the purchase of the Sportage, which included a down payment of $2,500 and the surrender of her Soul, in exchange for the purchase and financing terms for the Sportage.

103. Plaintiff justifiably relied Defendants' misrepresentations of material facts, as a result of which she sustained losses and damages.

104. Specifically, had Plaintiff not been misled by Defendants that she was purchasing the Sportage under the terms of the RIC, she never would have agreed to pay the $2,500 to Generation Kia or to trade in her Soul to Generation Kia.

105. Had the Defendants been truthful about the sales terms and the contents of the RIC and had the Defendants not made these fraudulent misrepresentations, Plaintiff would have walked away and avoided the transaction entirely.

106. As a result of Plaintiff's reasonable reliance upon Defendants' misrepresentations, she has been damaged in an amount to be determined at trial and is entitled to actual and punitive damages, attorneys' fees, and costs and expenses.

## COUNT VII
## Breach of Contract

107. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

108. On or around March 1, 2019, Plaintiff entered into a valid, binding, and enforceable RIC with Defendants pursuant to which Plaintiff became the titleholder of the Sportage.

109. Defendants nonetheless proceeded to unlawfully cancel the RIC and repossess the Sportage without contractual or legal basis and in breach of the agreement, thereby harming Plaintiff in an amount to be proven at trial.

## COUNT VIII
## Breach of the Implied Covenant of Good Faith and Fair Dealing

110. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

111. The RIC is a valid, binding and enforceable agreement.

112. As a valid, binding and enforceable agreement, the RIC has an implied covenant of good faith and fair dealing in the course of performance.

113. The RIC indicates that trade-in value of the Soul was $6,100.

114. The RIC further indicates that the remaining credit balance owed on the Soul was also $6,100.

115. Thus, as set forth in the RIC, Plaintiff received no value for her trade-in of the Soul because value of the trade-in less the amount owed equals $0.00.

116. By failing to reasonably promptly pay the remaining balance owed on the Soul to Credit Acceptance Corporation, Defendants injured Plaintiff, interfered with her ability to enjoy the fruits of the RIC, and detrimentally and irreparably impaired the value of the RIC.

117. As a result of the Defendants' breaches of the implied covenant of good faith and fair dealing, Plaintiff has suffered damages in an amount to be proven at trial.

**WHEREFORE**, Plaintiff seeks judgment in Plaintiff's favor and damages against Defendants:

(a) awarding Plaintiff statutory damages and civil penalties, actual damages, consequential damages, punitive damages, costs and expenses, and reasonable attorney's fees;

(b) declaratory judgment; and

(c) such other and further relief as may be necessary, just, and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Ms. Velazquez demands a trial by jury as to all issues so triable.

Dated:  February 28, 2020

                                              Respectfully submitted,

                                              */s/ Evan S. Rothfarb*
Schlanger Law Group LLP
9 East 40th Street, Suite 1300
New York, NY 10016
T: 212-500-6114
F: 646-612-7996
E: erothfarb@consumerprotection.net
*Attorneys for Plaintiff*